IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 13-cv-03414-RBJ

DONNA VANLANDINGHAM,

    Plaintiff,

v.

GRAND JUNCTION REGIONAL AIRPORT AUTHORITY,

    Defendant.

ORDER

This case comes before the Court on Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [ECF No. 16]. The Court has jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 3732(a). The motion became ripe for review on April 10, 2014 upon the filing of Defendant's Reply [ECF No. 23]. For the following reasons, the motion is granted.

**BACKGROUND**

The plaintiff alleges, and for present purposes the Court will take as true, the following facts (unless otherwise noted). The plaintiff, Donna VanLandingham, began her employment with the Grand Junction Regional Airport Authority (the "Airport") on March 17, 2003 as its Public Safety Assistant. Over the years that followed Ms. VanLandingham was promoted several times, eventually rising to the position of Airport Security Coordinator. In this position Ms. VanLandingham reported directly to the Airport Director, then Rex Tippetts.

In her capacity as Airport Security Coordinator, Ms. VanLandingham had access to sensitive information involving security systems at the Airport, including construction projects

involving security issues. In late 2009 Ms. VanLandingham became involved in a project to fence the Airport perimeter (the "Fence Project"). The Fence Project began as a fence to prevent wildlife incursions on the Airport's runway but was later converted by Mr. Tippetts into a security fence designed to restrict human access to the general aviation areas of the airport. Nevertheless, Mr. Tippetts continued to assert eligibility for funding by the Federal Aviation Administration ("FAA") and by the Transportation Security Administration ("TSA") based on the fence's prior status as a wildlife fence, knowing that the funding would not have been available had he accurately described the project as a security fence.

According to Ms. VanLandingham, Mr. Tippetts deceived the Airport Authority, the business and property owners at the Airport, and the FAA by falsely claiming that (1) a Wildlife Hazard Assessment conducted by the United States Department of Agriculture required the installation of a perimeter fence to prevent animal excursions; (2) the Fence Project was for the purpose of preventing the incursion of unwelcome animals onto the aircraft operating areas; (3) the TSA required a new or enhanced fence to secure the General Aviation areas of the Airport; and (4) the Fence Project would be funded by the FAA as a Wildlife Hazard Fence. Further, Mr. Tippetts allegedly concealed from the Airport Authority that constructing a wildlife hazard fence was a substantially less expensive project than constructing the security fence. Finally, Ms. VanLandingham asserts that there was no need or requirement to construct the security fence.

In November 2010 Mr. Tippetts instructed Ms. VanLandingham to attend a meeting of the various tenants of the Airport who were concerned about the planned location of the security fence and its access gates. Ms. VanLandingham was directed to tell the tenants that the security fence was being built to meet a specific requirement of the TSA. Ms. VanLandingham refused to make these statements to the tenants, believing them to be lies, and told Mr. Tippetts that she

could not follow his instruction because she "could not lie and deceive the [tenants]." Complaint [ECF No. 1] at ¶ 19. Immediately following her refusal to speak at this meeting, Mr. Tippetts reassigned Ms. VanLandingham to the Subway fast food franchise in the Airport terminal. Her duties included opening at 4:30am, doing dishes, and cleaning. No reason for the change was provided to Ms. VanLandingham.

Approximately one month later, on January 5, 2011, Ms. VanLandingham was orally discharged by Mr. Tippetts. Mr. Tippetts also presented Ms. VanLandingham with a document entitled Confidential Separation Agreement and General Release (the "Separation Agreement"). The Separation Agreement provided for seven weeks of severance pay ($8,153.60), three months of paid COBRA coverage, and one month of outplacement services. [ECF No. 16-2 at 1].

I will note here one significant error of fact contained in the Complaint. Ms. VanLandingham alleged that the $8,153.60 paid as part of the consideration for her release was, in reality, a sum to which she was already entitled for accrued salary and vacation time, and that she was told that unless she signed the release, she would not receive compensation for that time. Complaint [ECF No. 1] ¶¶ 31–33. Those allegations were shown to be incorrect in records filed as Exhibit B to the Answer of the original co-defendant, Mr. Tippetts. [ECF No. 12-2]. In the response to the pending motion, plaintiff's counsel acknowledged that Ms. VanLandingham had been paid all sums due to her as a result of her employment (in addition to the $8,153.60 paid as part of the consideration for a release), and that Ms. VanLandingham was withdrawing "Count III," her breach of contract claim. [ECF No. 22 at 3]. The records establish that upon her termination Ms. VanLandingham was immediately paid her unpaid salary, accrued vacation days, and paid time off for a net sum of $9,964.86. Accordingly, the Court includes this now undisputed fact in its recitation of the factual background.

In exchange, Ms. VanLandingham agreed to release any and all causes of action pertaining to or arising from the employment relationship based in whole or in part upon any act or omission occurring on or before January 5, 2011. [ECF No. 16-2 at 2]. Just before the signature line, the Separation Agreement reads:

> **I HAVE CAREFULLY READ THE ABOVE AND I EXECUTE IT VOLUNTARILY, FULLY UNDERSTANDING AND ACCEPTING THE PROVISIONS OF THIS AGREEMENT IN ITS ENTIRETY AND WITHOUT RESERVATION AFTER HAVING HAD SUFFICIENT TIME AND OPPORTUNITY TO CONSULT WITH MY LEGAL ADVISORS PRIOR TO EXECUTING THIS AGREEMENT. I HAVE BEEN ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTING THIS AGREEMENT. IN AGREEING TO SIGN THIS AGREEMENT, I HAVE NOT RELIED ON ANY STATEMENTS OR EXPLANATION MADE BY THE AIRPORT, ITS OFFICERS, EMPLOYEES OR ATTORNEYS. I HAVE HAD AT LEAST TWENTY-ONE (21) DAYS TO CONSIDER THIS AGREEMENT. I UNDERSTAND THAT IF I DO NOT RETURN THIS AGREEMENT SIGNED BY ME TO THE THE [*sic*] AIRPORT UPON THE EXPIRATION OF THE TWENTY-ONE (21) DAY CONSIDERATION PERIOD, THIS OFFER WILL EXPIRE. I UNDERSTAND THAT I MAY REVOKE AND CANCEL THE AGREEMENT WITHIN SEVEN (7) DAYS AFTER SIGNING IT BY SERVING WRITTEN NOTICE UPON THE AIRPORT.**

*Id.* at 3–4 (emphasis and capitalization in original). Ms. VanLandingham signed the Separation Agreement 20 days after the notice of termination, on January 25, 2011.[1] *Id.* at 4.

In her Complaint, Ms. VanLandingham claims that she signed the Separation Agreement "in the good faith belief that she had no choice. She did not have the time or the money to retain a lawyer to advise her of her rights." Complaint [ECF No. 1] at ¶ 30. She added that she "was

---

[1] Ms. VanLandingham has continued to assert that she only had seven days to consider the agreement, [ECF No. 1 at ¶ 28; ECF No. 22 at 4, ¶ 1], whereas the defendants claim she in fact had 21 days [ECF No. 16 at 2, ¶ 5]. Given that the agreement was signed twenty days after being presented and that it explicitly provides for a 21-day window in which to sign [ECF No. 16-2 at 2, 4], the Court finds that Ms. VanLandingham had 21 days in which to sign. Notably, she was also given seven days after signing in which to revoke the agreement. [ECF No. 16-2 at 3]. Thus she in fact had 28 days in total to consider the agreement.

4

unaware that there were laws protecting her from retaliation should she reveal information involving false claims made to the Federal Government," and that she "was unaware that there were laws prohibiting bribery and intimidation to obstruct justice." *Id.* Further, she did not realize "that the public policy of the state of Colorado prohibited retaliation against an individual for doing her civic duty in refusing to do an illegal act" and that she "was unaware that there were state laws protecting her right to receive back pay." *Id.*

### REMAINING CAUSES OF ACTION

Ms. VanLandingham alleges that the Separation Agreement is unenforceable because, among other reasons, (a) it was not supported by adequate consideration; (b) it was signed under duress;[2] and (c) it violates public policy. She originally asserted three causes of action: (I) violation of the False Claims Act Anti-Retaliation Provision against Mr. Tippets; (II) violation of the False Claims Act Anti-Retaliation Provision against the Airport; and (III) breach of employment contract. Ms. VanLandingham has stipulated to the dismissal of Count I, and she has withdrawn Count III. With respect to Count II, the question at issue in this motion is not whether the anti-retaliation provision was violated, but whether Ms. VanLandingham has a right to bring this claim in the first place given the release provision of the Separation Agreement.

Ms. VanLandingham argues that the Separation Agreement is unenforceable because she did not make a knowing and voluntary waiver of her rights (having signed the Agreement under economic and emotional duress) and because it violates public policy. For the reasons that follow the Court disagrees that she has stated an actionable claim under either theory.

### ANALYSIS

---

[2] Ms. VanLandingham's Response recharacterizes this claim as an unknowing and involuntary waiver argument. [*See* ECF No. 22 at 2–3].

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard.  *See e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

"[I]n general, a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings." *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999).  However, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

<u>Knowing and Voluntary Waiver</u>

Dismissal of a claim under Rule 12(b)(6) on the basis of an affirmative defense (such as waiver) is proper where that defense is clear from the face of the Complaint. *Martinez v. City & Cnty. of Denver*, No. 08-CV-01503-PAB-MJW, 2010 WL 1380529, at *3 (D. Colo. Mar. 31, 2010) (citing *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1310 n.3 (10th Cir. 1999), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). The Airport argues that it is clear from the face of the Complaint that the release provision of the

Separation Agreement bars this action. In particular, the Airport notes that Ms. VanLandingham executed the Separation Agreement on January 25, 2011, twenty days after being presented with it; that Ms. VanLandingham specifically acknowledged that she understood what she was signing; that she executed the agreement voluntarily; that she had been advised to consult with an attorney; that she had had sufficient time to consider the release; and that she received valuable consideration for the release that would not have been available to her had she not signed it. Ms. VanLandingham responds that her Complaint sufficiently asserts that she did not sign the release knowingly and voluntarily, and that that is as far as the Court need go on a Rule 12(b)(6) motion.

To determine whether the waiver was entered into knowingly and voluntarily, the Court must look to the "totality of the circumstances" under which the release was signed. In particular, the Court must take into account the following factors:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

*Torrez v. Pub. Serv. Co. of New Mexico, Inc.*, 908 F.2d 687, 689–90 (10th Cir. 1990) (internal quotation marks, alterations, and citation omitted). At this stage of the litigation, the plaintiff need only plead sufficient facts making out a plausible claim that the Agreement was entered into unknowingly and involuntarily.

In her Complaint, Ms. VanLandingham asserts that she signed the agreement without the opportunity to seek legal advice, without any opportunity to negotiate its terms, and without knowledge of her right to be protected from retaliation under the False Claims Act and under

Colorado law. Given what else is evident from the face of the Complaint, these allegations are not sufficient plausibly to plead that the waiver was entered into involuntarily and unknowingly. Applying the *Torrez* factors, the Court finds:

1. The Separation Agreement was neither lengthy nor complex. No part of it was in "fine print." The critical release language was capitalized and bolded and was placed immediately above her signature line.
2. Ms. VanLandingham had sufficient education and business experience to be promoted up the ranks to become the Coordinator of Security for the Airport. She was not an unsophisticated person of whom the Airport could easily have taken advantage.
3. She was given 21 days to deliberate before signing the agreement, and she took 20 of those days before she signed. Further, she had seven more days to revoke the agreement after signing but declined to do so.
4. I take as true her allegation that she did not know the full range of her rights.
5. But she was encouraged to consult with an attorney and was given time to do so. She alleges that she did not believe she could afford an attorney. That conclusory allegation tends toward the implausible. She had been receiving a substantial salary, and we know that she also received more than $9,000 immediately upon her termination. It is a matter of how one chooses to prioritize.
6. I accept as true that the release was presented to her on a "take it or leave it" basis. The point, however, is that she could have left it. She might have forfeited the additional $8,300 in separation pay (plus the other consideration), but that was her choice.

7. The consideration she chose to accept exceeded what she was entitled to by contract and law, even though she did not acknowledge that in her original Complaint. Nor does she allege that she offered to return this consideration. The fact remains that she was offered, she accepted, and she retained separation pay above and beyond her accrued unpaid salary and leave, but now she wishes to repudiate the release that she provided in exchange.

In short, the majority of these factors weigh against her allegation that she signed the Separation Agreement under duress. One must also remember that the capitalized and bolded language began with the statement: "**I HAVE CAREFULLY READ THE ABOVE AND I EXECUTE IT VOLUNTARILY, FULLY UNDERSTANDING AND ACCEPTING THE PROVISIONS OF THIS AGREEMENT IN ITS ENTIRETY AND WITHOUT RESERVATION.**" Particularly given Ms. VanLandingham's intelligence and capacity that earned her the Coordinator of Security position in the first place, I give this representation credibility.

<u>Public Policy</u>

Ms. VanLandingham's second argument is that the release provision of the Separation Agreement violates public policy and is therefore unenforceable. She contends that the release provision is "void against the public policy embodied in the False Claims Act [("FCA")]," arguing that she could not waive her statutory rights under the FCA because the statute serves to protect the interests of the public as a whole. [ECF No. 22 at 11]. The Airport retorts that Ms. VanLandingham's potential retaliation claim under the FCA constitutes a private right, and that she could voluntarily waive it if she so chose.

"[A] statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704 (1945). "With respect to private rights created by a federal statute . . . the question of whether the statutory right may be waived depends upon the intention of Congress as manifested in the particular statute." *Id.* at 704–05. "[A]bsent some affirmative indication of Congress' intent to preclude waiver, . . . statutory provisions are subject to waiver by voluntary agreement of the parties." *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995). Ms. VanLandingham argues that while her claim is a private one, it furthers a government interest and may not be waived. [ECF No. 22 at 12]. However, Ms. VanLandingham confuses her private retaliation claim with a public *qui tam* action, which the defendant concedes may continue to be actionable outside of the release. [*See* ECF No. 16 at 4–6].

Under the Anti-Retaliation Provision of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, "[a]ny employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h)(1). There is no subsection under the anti-retaliation provision affirmatively indicating (or even suggesting) that Congress intended to preclude waiver of this right to bring suit. On the other hand, the *qui tam* provision of the FCA states: "A person may bring a civil action for a violation of [the Act] for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the

dismissal and their reasons for consenting." 31 U.S.C. § 3730(b)(1).  In reading these two provisions side by side, it is evident that Congress knew how to but decided not to include a no-waiver clause within the anti-retaliation provision of the FCA.

The Tenth Circuit has not specifically addressed the enforceability of a release purporting to waive FCA anti-retaliation claims, but courts in at least two other circuits have found that releases of private claims under the FCA are permitted.  *See Brown v. City of S. Burlington, Vt.*, 393 F.3d 337, 343 (2d Cir. 2004); *Coleson v. Inspector Gen. of Dep't of Def.*, 721 F. Supp. 763, 765, 769 (E.D. Va. 1989) (finding that blanket release included release of potential retaliation claims under the Federal Claims Act, 31 U.S.C. § 3730(h)).  Though Ms. VanLandingham argues that the right to bring a retaliation claim must be maintained for the public interest, the Court disagrees.  An individual may waive such a right for valuable consideration without obstructing the public interest; notably, Ms. VanLandingham admits that there is an ongoing federal investigation of the Airport and that "corrective action has been taken or is being considered." [ECF No. 22 at 14].  This type of governmental action is precisely what the *qui tam* provision seeks to protect, and it is clear that the public interest has not been compromised in spite of Ms. VanLandingham's having waived her right to bring a retaliation claim.

## ORDER

For the reasons set forth above, the Court GRANTS Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [ECF No. 16] with prejudice.  The Airport's Unopposed Motion to Stay Deadlines and Proceedings [ECF No. 25] is moot.  The Airport is awarded its reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 2nd day of June, 2014.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge